UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO 08-60577-CIV-MARRA/JOHNSON

MIKE SQUILLACE, individually and
ALL TERRAIN LANDSCAPING, INC.,
a Florida Corporation,

    Plaintiffs,

v.

CITY OF PARKLAND, a Florida
Municipality,

    Defendant.
_____/

## ORDER AND OPINION

THIS CAUSE comes before the Court on Defendant City of Parkland's ("Defendant" or the "City") Renewed Motion for Judgment as a Matter of Law or in the Alternative Motion for New Trial (DE 64). Plaintiffs Mike Squillace ("Squillace") and All Terrain Landscaping Inc. ("All Terrain") (collectively, "Plaintiffs") filed a Response to the motion (DE 69), and Defendant filed a Reply (DE 70). The motion is now fully briefed and ripe for review. The Court has carefully considered the motion and response, and is otherwise fully advised in the premises.

**Background**

Plaintiff Squillance, a resident of an area of the City known as the Ranches, operated a lawn maintenance service from his residence through his corporation, Plaintiff All Terrain Landscaping, Inc. Plaintiffs brought an action against Defendant pursuant to 42 U.S.C. § 1983, alleging that Defendant violated Plaintiffs' right to equal protection under the law by selectively

1

enforcing City Ordinance 2006-25 against them. Plaintiffs claimed that the City singled them out for code enforcement while allowing other similarly situated lawn maintenance service companies of which the City was aware to continue to operate. Plaintiffs alleged that the City's action against them was part of an ongoing City policy or custom to cause injury to Plaintiffs' property interests and was sanctioned by certain of Defendant's policy makers with ultimate authority in this subject area of government business.

The jury trial in this cause was held on September 22 and 23, 2009. At the conclusion of the trial, the jury returned a verdict finding, by a preponderance of the evidence, that the City violated Plaintiffs' rights to equal protection under the law. See DE 62 at ¶ 1. The jury also found that the "policy maker or makers [who] adopted or approved the unconstitutional policy" were Mayor Michael Udine, City Manager Karen Gardner-Young, and Environmental Resources Manager and Code Enforcement Officer Brian Archer. See DE 62 at ¶ 2. The jury found that Plaintiffs are entitled to damages in the amount of $225,000.00.

Defendants move for judgment as a matter of law or, alternatively, a new trial, arguing that (1) Plaintiffs lack standing to bring this lawsuit; (2) Plaintiffs failed to establish their damages; (3) Plaintiffs failed to establish a § 1983 cause of action; (4) Plaintiffs cannot state an equal protection claim; and (5) one of the jury instructions identifying Defendant's policy makers was erroneous.

**Standard of Review**

Defendant moves for renewed judgment as a matter of law. Under Rule 50(b) of the Federal Rules of Civil Procedure, "a party may renew its motion for judgment as a matter of law after the jury has returned its verdict, if there is no legally sufficient evidentiary basis for a

reasonable jury to find for the non-moving party." Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1251-52 (11th Cir. 2007); Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004). Judgment as a matter of law is appropriate on a particular portion of a jury award when there is a lack of record evidence supporting that award. Collado v. UPS, 419 F.3d 1143, 1149 (11th Cir. 2005).

Alternatively, Defendant moves for a new trial. Rule 59 of the Federal Rules of Civil Procedure states, in pertinent part, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R.Civ. P. 59(a). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." Del Rio Dist. v. Adolph Coors Co., 589 F.2d 176, 179 n.3 (5th Cir. 1979)[1] quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2803 (1973 and 1991 supp.); see also Shaps v. Provident Life & Accident Ins. Co., 244 F.3d 876, 885 (11th Cir. 2001) ("[A] new trial may be ordered only when the interests of substantial justice are at stake.") The motion may be granted when the "verdict is against the clear weight of the evidence, when the damages are excessive, or when the court determines the trial was not fair." Hall v. Norfolk Southern Railway Co., 829 F. Supp. 1571, 1579 (N.D. Ga. 1993) citing National Car Rental System v. Better Monkey Grip Co.,

---

[1] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

511 F.2d 724 (5th Cir. 1975).

**Discussion**

*Municipal Liability*

Defendants argue that Plaintiffs failed to establish a § 1983 against the City, because the evidence presented at trial was insufficient to establish municipality liability. Under Section 1983, municipalities may not be held liable on a theory of respondeat superior. Monell v. Dep't of Social Serv. of City of New York, 436 U.S. 658, 691 (1978); Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1270 (11th Cir.2005) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). A municipality may only be held liable where an "official policy" causes a constitutional violation. See Monell, 436 U.S. at 694; Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir.2003). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original).

In order to establish a municipality's policy, a plaintiff must identify either (1) an officially promulgated municipality policy or (2) an unofficial custom or practice of the municipality shown through the repeated acts of a final policymaker for the municipality. See Grech, 335 F.3d at 1329 (citing Monell, 436 U.S. at 690-91). "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation," most plaintiffs must demonstrate the latter. Id. at 1330. In Pembaur, the Supreme Court held that "municipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for

4

establishing final policy with respect to the subject matter in question." 475 U.S. at 483-84 (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)).

"[T]he power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level." Pembaur, 475 U.S. at 480.  Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority. Id. at 482.  Under Monell, governmental liability attaches when the constitutional injury results from the implementation or "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  436 U.S. at 694.  Whether an official possesses policy-making authority with respect to particular matters will be determined by state law.  Pembaur, 475 U.S. at 483-84; City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988).  "Without attempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." Praprotnik, 485 U.S. at 125.  "In any event, however, a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." Id. at 126.

The identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge    Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989).  Thus, the Court must look to state law and local law to determine what official(s) and/or body has the final policymaking authority with respect to the area of code enforcement. Pembaur, 475 U.S. at 483-84; Praprotnik, 485 U.S. at

125.

Once those officials with final policy-making authority on a particular issue have been identified by the trial judge, the jury must then "determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Jett, 491 U.S. at 737 (citations omitted). Of course, this determination requires that Plaintiff produce evidence of a *decision*, i.e. "a deliberate choice to follow a course of action is made from among various alternatives," by the final policy-maker, which resulted in the deprivation of Plaintiff's rights. Pembaur, 475 U.S. at 483-84. See also Searcy v. City of Dayton, 38 F.3d 282, 287 (6th Cir. 1994) ("[T]o satisfy the Monell requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.' ") (citations omitted).

In the case at bar, Defendant presented evidence that, under the City of Parkland's "weak mayor form of government," there is an elected council consisting of a mayor and four other City commissioners. Defendant presented evidence that the mayor does not have any more power than the other four commissioners. Defendant also presented evidence that "any policies are set by the governing body," the City Commission. Thus, as a matter of law, the Court finds the City Commission is the Defendant's final policy maker. However, Plaintiffs presented no evidence that the City Commission took any actions toward Plaintiffs with respect to the alleged selective enforcement. Accordingly, with Plaintiffs' agreement, the City Commission was not offered to

the jury as a potential policy maker who adopted or approved the unconstitutional policy.[2]

Rather, pursuant to Plaintiffs' proposed instruction, in the event that the jury found that Defendant violated Plaintiffs' rights to equal protection under the law, the jury was presented with three options of "policy maker or makers who adopted or approved the unconstitutional policy." These were as follows: Mayor Michael Udine; City Manager Karen Gardner-Young, and Environmental Resources Manager and Code Enforcement Officer Brian Archer. See DE 62 at ¶ 2.[3]

A review of the evidence presented at trial and the arguments in the post-trial briefs requires the Court to conclude that, as a matter of law, pursuant to state law, including local ordinances and regulations, Mayor Michael Udine, City Manager Karen Gardner-Young, and Environmental Resources Manager and Code Enforcement Officer Brian Archer were not the official policy makers of the local governmental unit with respect to the disputed zoning and code enforcement matters. Thus, even though Plaintiffs presented evidence at trial that Mayor Udine did not hesitate to intervene in code enforcement decisions[4] and that code enforcement

---

[2] Plaintiffs were asked who they considered policy makers and who they wanted to place on the verdict form as a policy maker for the jury to determine who may have selectively enforced the ordinance against them. Plaintiffs expressly chose not to name the City Commission as a policy maker because Plaintiffs' counsel conceded that "I don't think based on the evidence they [the jury] could find it was the City Commission acting as a body."

[3] The Court expressed concern that Plaintiff had presented no evidence in the record that there was a <u>decision</u> by a <u>policy maker</u> to selectively enforce the City ordinance against Plaintiffs. In an abundance of caution, however, the Court allowed Plaintiffs to include their suggested policy makers in the jury instructions and on the verdict form.

[4] Even assuming Mayor Udine was an official policy maker, the only evidence of his involvement in this case was at an October 13, 2006 meeting between the Plaintiff, his wife and his brother, at which Mayor Udine advised Plaintiffs the ordinance would be enforced against everyone. To the extent there was evidence presented that the ordinance was not uniformly

officers looked to City Manager Gardner-Young and Environmental Resources Manager and Code Enforcement Officer Archer for direction, this type of evidence of de facto authority is insufficient to meet the requirements for establishing a policymaker for purposes of § 1983 municipal liability. See Praprotnik, 485 U.S. at 143-44 (J. Brennan, concurring, explaining that the plurality's construction of § 1983 to require courts to identify municipal policymakers by referring exclusively to applicable state statutory law does not allow reliance on extrastatutory evidence of the actual allocation of policymaking authority). To hold otherwise in this case would result in imposing liability on Defendant based upon the acts of its agents in violation of the law against respondent superior liability for a municipality in actions under 42 U.S.C. § 1983. As the Supreme Court held in Praprotnik, the trial judge "would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it," 485 U.S. at 126.

Accordingly, as Plaintiffs failed to present evidence in the record that, pursuant to state law, including local ordinances and regulations, the decisions of any of three officials at issue represent the official policy of the local governmental unit with respect to the disputed zoning and code enforcement matters, Plaintiffs' cannot prove municipal liability under § 1983 for their selective enforcement claim and therefore the Defendant is entitled to judgment as a matter of law.

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion Renewed Motion for Judgment as a Matter of Law or in the Alternative Motion for New

---

enforced, there was no evidence presented to show that the Mayor was involved in any decision to selectively enforce the ordinance against Plaintiffs.

Trial (DE 64) is **GRANTED.**  Judgment as a matter of law is hereby entered in favor of

Defendant.  A separate final judgment shall follow.

        **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 1st day of March, 2010.

                                                       _____
                                                       KENNETH A. MARRA
                                                       United States District Judge

Copies furnished to:
all counsel of record